UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CT-3158-BO

| | |
|---|---|
| SCOTT TYREE, )<br>      Plaintiff, )<br> )<br>v. )<br> )<br>UNITED STATES OF AMERICA, )<br>      Defendant. ) | O R D E R |

Scott Tyree, a federal inmate, brings this action seeking relief pursuant the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. Compl., D.E. 1. Defendant is now before the court with a motion to dismiss or, in the alternative, motion for summary judgment. Mot. to Dismiss, Summ. J., D.E. 16. Plaintiff was given proper notice and has filed two responses. Roseboro, D.E. 18; Response, D.E. 27; 2nd Response, D.E. 33. The matter is ripe for ruling.

Statement of Facts

On July 19, 2012, plaintiff was housed in the Special Housing Unit ("SHU") at Low Security Correctional Institution, Butner, North Carolina ("LSCI Butner"). Compl., at 2. Prior to "the 1600 institutional count" another inmate, inmate Nickerson, was also placed in the same cell. Id. After plaintiff fell asleep, that cellmate disconnected plaintiff's Continuous Positive Airway Pressure ("CPAP") medical device. Id. Within a minute or two of disconnecting the CPAP, the cellmate began assaulting plaintiff. Id. After approximately five minutes, inmate Nickerson stopped assaulting plaintiff, moved to the front of the cell, and pressed the distress button. Id. Inmate Nickerson also started "yelling 'CO' repeatedly." Id. After two more minutes passed inmate Nickerson resumed his assault on plaintiff. Id. At 3. Inmate Nickerson

hit plaintiff in the head and "inflicted serious bodily harm." Id. The assault continued for five more minutes at which time staff intervened and stopped the assault. Id.

After staff arrived, plaintiff was taken to Health Services and then he was transported to the WakeMed Emergency Room for treatment of his injuries which included a laceration above his left eye requiring nine stitches, numerous contusions, cuts, and scrapes. Id. Plaintiff was also given a CT-Scan to determine if there was any fracture to the skull. Id. The following year, "[o]n July 3 and 4, 2013, plaintiff suffered a grand mal seizure [which] . . . he has never been diagnosed with a seizure disorder at any time prior to the assault, nor has he suffered any head trauma, other than the trauma from the assault that is the cause of this action." Id. Plaintiff alleges that had the SHU officers responded in the "time-frame mandated by internal FBOP policy and procedures," his injuries would have been less extensive. Id. at 6. He seeks $ 4,000,000.00 in damages. Id. at 7.

Defendants' summary judgment material supplements the factual outline. On the day at issue, two correctional officers, Officers Seaman and Ashley, were working in the SHU at LSCI Butner during the evening watch. Decl. Seaman, ¶ 3. The evening watch runs from 4:00 p.m. until 12:00 a.m. Id. The LSCI Butner SHU consists of four ranges, and staff conduct rounds on each range every thirty minutes in order to visually check cells and, among other things, make sure there are no ongoing emergencies. Id.

At approximately 11:27 p.m., Senior Officer Seaman was making rounds in the SHU. While in B range, he saw that an emergency light was on outside of plaintiff's cell, cell B-104. Id., ¶ 5. The emergency light is a red light outside of each cell, which is activated when an individual pushes a duress button located inside the cell. Id. Additionally, when a duress button

2

is pushed, a light goes off in the SHU office, as well as an audio tone. Id. At the same time, in the SHU office, Senior Officer Ashley saw the light go off on the switchboard. As soon as these officers observed the activation of the duress light at cell B-104, they responded immediately. Id.; Decl. Ashley, ¶ 5.

Officer Seaman went to the cell, turned on the inside light, and observed two inmates holding each other in a head lock. Id., ¶ 4. He called for assistance and ordered the inmates to get on the ground. Id. The inmates complied, and as responding staff arrived, the inmates were removed from their cell and medically assessed. Id. Plaintiff was taken to the local hospital for medical treatment. Id. Plaintiff's cellmate was found to be the aggressor in this incident and was disciplined for the assault.[1] See Exhibit 1, ¶ 3.

Plaintiff appears to have properly exhausted this FTCA action, and proper exhaustion is not contested.

Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson, 477 U.S. at 247–48. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at

---

[1] Plaintiff states that he was initially charged with the infraction of "fighting." Compl., at 3. However, the Incident Report was later "thrown out" by the Disciplinary Hearing Officer. Id. at 4.

3

248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

FTCA Negligence Claim

The FTCA is a waiver of the United States' sovereign immunity, which permits a claimant to sue the United States for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. . . ." 28 U.S.C. § 2675(a); United States v. Kubrick, 444 U.S. 111, 116 n. 4 (1979). Under the FTCA, the substantive law of the place where the act or omission occurred is to be applied, which in this case is North Carolina. Cibula v. United States, 551 F.3d 316, 319 (4th Cir. 2009) (citing 28 U.S.C. § 1346(b)(1)).

North Carolina law requires that "in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." Blackwell v. Hatley, 202 N.C.App. 208, 212, 688 S.E.2d 742, 746 (2010) Camalier v. Jeffries, 340 N.C. 699, 460 S.E.2d 133, 136 (1995). "Actionable negligence is the failure to exercise the degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care." Hart v. Ivey, 332 N.C. 299, 420 S.E.2d 174 (1992) (internal citations omitted).

4

Plaintiff is a federal inmate who was assaulted by another inmate. As the United States Supreme Court has determined, the duty of care owed by the BOP is fixed by 18 U.S.C. § 4042,[2] independent of an inconsistent state rule. United States v. Muniz, 374 U.S. 150, 164 (1963). The BOP's duty of care owed to a prisoner is "the exercise of ordinary diligence to keep prisoners safe and free from harm." Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976). Consistent with this duty, BOP personnel can only be deemed negligent in violation of this duty when personnel knew or reasonably should have known of potential problem between inmates. Parrott v. United States, 536 F.3d 629, 637 (7th Cir. 2008).

North Carolina does not have an inconsistent state rule. "A duty is defined as an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." Davis v. N.C. Dep't of Human Resources, 121 N.C. App. 105, 112, 465 S.E.2d 2, 6, (1995). "A breach of the duty occurs when the person fails to conform to the standard required." Id. In general, however, "[t]he government is not an insurer of the safety of a prisoner." Jones, 534 F.2d at 54. Rather, "a prison official is liable when he knows of, or in the exercise of reasonable care should anticipate, danger to the prisoner, and with such knowledge or anticipation fails to take the proper precautions to safeguard his prisoners." Thames v. North Carolina Dept. of Correction, 205 N.C.App. 469, 698 S.E.2d 201, at *2 (N.C. App. July 20, 2010) (internal quotations omitted); Taylor v. North Carolina Dep't of Correction, 88 N.C. App. 446, 448, 363 S.E.2d 868, 871 (1988) ("[D]efendant

---

[2] Pursuant to 18 U.S.C. § 4042, the BOP must "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3).

5

Case 5:14-ct-03158-BO   Document 34   Filed 08/28/15   Page 5 of 6

[prison officials] had a duty of reasonable care to protect the plaintiff from reasonably foreseeable harm.").

In this case, plaintiff was asleep in his cell when his cellmate unplugged his CPAP machine and began assaulting him. Plaintiff does not allege that staff knew, or should have known, of a potential assault. Plaintiff's contention is that staff negligently failed to respond quickly enough to the emergency when the duress button was pushed in his cell. However, the two officers working the unit at that time responded as soon as they saw the duress light. This was within minutes, at the most, of the light being activated. The fact that the correctional officers responded to the duress light immediately upon seeing it, called for assistance, and separated the inmates, clearly demonstrates that the officers exercised the degree of care which a reasonable and prudent person would exercise under similar conditions. Plaintiff's unsupported allegations that the officers should have responded faster is merely speculative and is not supported by any facts. White v. White, 886 F.2d 721, 724 (4th Cir. 1989) (pro se litigant complaints must be liberally construed; however, a minimum level of factual support is required). The correctional officers did not breach their duty of care to plaintiff. See Prozer v. United States, No. 9:14-1249, 2014 WL 6686697, *18 (D.S.C. Nov. 25, 2014) (the BOP's duty towards the protection of prisoners is not the guarantee of "a risk-free environment"); Usher v. United States, No. 10-CV-47, 2010 WL 3721385 (E.D. Ky. Sept. 15, 2010) (same).

Accordingly, summary judgment [D.E. 16] for defendant is GRANTED, and the case is CLOSED.

SO ORDERED, this 28 day of August 2015.

_Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE